07 CV 6692

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE PRESKA

| | | |
|---|---|---|
| JOHN MONTGORIS and<br>SHEILA MONTGORIS,<br>    Plaintiffs,<br><br>VS.<br><br>GENERAL ELECTRIC COMPANY,<br>FOSTER WHEELER, L.L.C., ET AL.<br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. _____<br><br>JUL 25 2007<br>U.S.D.C. S.D.N.Y.<br>CASHIERS |

## GENERAL ELECTRIC COMPANY'S AND FOSTER WHEELER'S NOTICE OF REMOVAL

TO THE HONORABLE JUDGE OF UNITED STATES DISTRICT COURT:

Pursuant to Title 28 U.S.C. § 1442(a)(1) and 1446, Defendants General Electric Company and Foster Wheeler, L.L.C. (collectively referred to as "defendants" or individually as "GE" or "Foster Wheeler"), give notice of removal of an action filed against them in the Supreme Court of the State of New York, County of New York, to the United States District Court for the Southern District of New York. In support, defendants respectfully offer the following:

### Preliminary Matters

1.  On May 14, 2007, plaintiffs filed this lawsuit, entitled John Montgoris and Sheila Montgoris, Index No. 106538-07 against GE, Foster Wheeler and numerous other defendants in the Supreme Court of the State of New York, New York County. *See* Summons and Verified Complaint attached hereto as Exhibit A.

2. Plaintiffs served GE and Foster Wheeler with Plaintiffs' Summons and Verified Complaint on June 29, 2007 and June 26, 2007, respectively. The Verified Complaint did not state plaintiffs' claims in a manner or in sufficient detail to inform defendants that the case was removable. *See Madden v. Able Supply Co.*, 205 F. Supp. 2d 695, 698 (S.D. Tex. 2002) (stating that if the initial pleading does not provide details of plaintiff's claims, the 30-day time period begins on the date defendant receives "other paper" specifically indicating grounds for removal). Prior to serving the Summons and Verified Complaint, plaintiffs' counsel forwarded a copy of Plaintiffs' Answers To Defendants' Fourth Amended Standard Set Of Interrogatories ("Answers") which were received on May 16, 2007. *See* Answers attached hereto as Exhibit B. Plaintiffs' Answers failed to inform defendants that the case was removable. Plaintiff John Montgoris was deposed on June 4, 2007. At his deposition, Mr. Montgoris testified that he was exposed to asbestos while working on several United States Navy ("Navy") ships as an employee of the Brooklyn Navy Yard. *See* Deposition Transcript attached hereto as Exhibit C. More specifically, there are allegations of exposure while working on, among other ships, the USS Constellation, USS New Jersey, USS Cooper's Island and USS Intrepid between 1956 and 1962. *Id.* at 50 and 69. Thus, it was not until Mr. Montgoris was deposed that defendants were provided sufficient information that the case was removable. As previously stated, however, defendants were not in a position to remove the case following plaintiff's deposition because they had not been served.

3. Thus, this Notice of Removal is timely filed in that it is filed within thirty (30) days after service of the initial pleading. 28 U.S.C. § 1446(b).

## Nature Of The Case

4.    The case is based on plaintiffs' allegations that John Montgoris's asbestos-related disease, specifically mesothelioma, was caused by his exposure to asbestos dust and/or fibers.

5.    Plaintiffs assert failure to warn claims against GE and Foster Wheeler and asserts strict liability and negligence claims, including failure to warn, against all other defendants based on various theories.

## Grounds For Removal

6.    This Notice of Removal is filed within thirty (30) days of plaintiffs' service of the initial pleading. 28 U.S.C. § 1446(b). GE manufactured marine steam turbines for use on Navy ships pursuant to contracts and specifications executed by the Navy. GE has confirmed that its marine steam turbines were on, among other ships, the USS Constellation. In addition, Foster Wheeler manufactured marine boilers and auxiliary equipment for use on Navy ships pursuant to contracts and specifications executed by the Navy. Foster Wheeler has confirmed that its marine boilers were on the USS Constellation. The basis for removal is that, in the manufacture and sale of turbines, boilers and other equipment for the Navy, including all aspects of warnings associated with those turbines, boilers and equipment, defendants were acting under an officer or agency of the United States within the meaning of 28 U.S.C. § 1442(a)(1).

7.    Should plaintiff file a motion to remand this case, defendants respectfully request an opportunity to respond more fully in writing, but offer the following authorities at this time:

8.    As recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 504 (1988), defendants have a federal defense to this action, *i.e.*, government contractor immunity from liability for injuries arising from any exposure to asbestos related to turbines, boilers and auxiliary equipment on board Navy vessels, insofar as they were constructed or repaired by defendants. Removal

pursuant to 28 U.S.C. § 1442(a)(1) is appropriate where the moving party can (1) demonstrate that it acted under the direction of a federal officer, (2) raise a colorable federal defense to plaintiffs' claims, and (3) demonstrate a causal nexus between plaintiff's claims and acts it performed under color of federal office. *Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 134-35 (1989).

9. In *Isaacson v. Dow Chemical Company*, 304 F.Supp.2d 442 (E.D.N.Y. 2004), plaintiff originally sued the manufacturer of Agent Orange in New Jersey State Court. Defendants removed to federal court asserting, among other things, federal jurisdiction under the All Writs Act. *Id.* at 445. The New Jersey District Court found removal appropriate under the All Writs Act. *Id.* The case was then transferred to the Eastern District of New York by the Multidistrict Panel. *Id.* The Court of Appeals for the Second Circuit affirmed the district court's denial of remand finding jurisdiction appropriate under the All Writs Act. *Stephenson v. Dow Chemical Company*, 273 F.3d 19 (2d Cir. 2003). On review, the United States Supreme Court remanded the case finding that the All Writs Act alone would not support removal. *Dow Chemical Company v. Stephenson*, 539 U.S. 111 (2003). On remand from the Supreme Court, the Second Circuit determined that jurisdiction could not be grounded in the All Writs Act and remanded the case back to the Eastern District of New York to determine if there was an alternative ground supporting federal jurisdiction. *Stephenson v. Dow Chemical Company*, 346 F.3d 19 (2d Cir. 2003). It is with that extensive procedural history that the district court examined the federal officer removal statute and found it sufficient to deny plaintiff's motion to remand. *Isaacson,* 304 F.Supp. at 445.

10. In reaching its conclusion, the *Isaacson* court discussed in detail the three elements necessary for removal under this statute. First, a defendant must demonstrate that it is a "person" within the meaning of the statute. *Id.* at 446. The definition of a "person" includes a corporation.

4

*Id.* Second, the defendant must establish that the suit is "for any act under color of federal office," i.e., there is a causal connection between the charged conduct and asserted official authority. *Id.* (citations omitted). Causation exists if the predicate acts of the state court suit were undertaken while the person was acting as or under a federal officer, and the acts were under color of the relevant federal office. *Id.* Third, defendants must raise a colorable claim to a federal law defense. *Id.* As previously stated, a colorable claim to a federal defense can be predicated upon the federal government contractor defense. *Id.* at 449.

11. The second element requires a causal nexus between the defendant's actions under the federal officer and plaintiff's state court claims. *Id.* at 447. A substantial degree of direct and detailed federal control over defendant's work is required. *Id.* What constitutes sufficient federal control is often central to a court's decision to uphold removal or remand a case. Several courts have upheld removal because defendants were sued as a result of building products pursuant to military specifications. *See Crocker v. Borden*, 852 F.Supp. 1322 (E.D.La. 1994)(holding that removal was proper for Westinghouse because its marine turbines were manufactured pursuant to Navy specifications); *see also, Pack v. AC and S, Inc.*, 838 F.Supp. 1099 (D.Md. 1993)(holding that removal was proper for Westinghouse because the government had extensive control over the manufacture of turbines, even specifying the type of asbestos cloth). Not all courts agree, however, on the amount of federal control necessary to uphold removal under this statute.

12. New York courts have not always viewed this issue consistently. Prior to the *Isaacson* case, the Eastern District Court remanded a similar matter involving Agent Orange. In *Ryan v. Dow Chemical Company*, 781 F.Supp. 934, 950 (E.D.N.Y. 1992), the district court remanded the case because it found that the control by the government was not sufficient to meet the

requirements of section 1442(a)(1). The district court reasoned that the government sought only to buy a ready-to-order herbicide from the defendant and did not cause or control the production of the unwanted byproduct, dioxin, which was the alleged cause of the injuries. *Id.*

13. In discussing *Ryan*, the *Isaacson* court acknowledged that it was a contradictory decision. *Isaacson,* 304 F.Supp. at 445. It declared, however, that the *Ryan* decision was "no longer persuasive" and went on to discuss Fifth Circuit cases that specifically rejected the *Ryan* conclusion. *See Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 392 (5th Cir. 1998)(holding that manufacturer of Agent Orange was entitled to removal pursuant to the federal officer removal statute); *see also, Miller v. Dow Chemical Company*, 275 F.3d 414, 417 (5th Cir. 2001)(also holding that manufacturer of Agent Orange was entitled to removal pursuant to the federal officer removal statute). The *Isaacson* court denied remand based on facts that were almost identical to those in *Ryan*. The *Isaacson* court concluded that the government ordered specifications differed from the specifications for the defendants' commercial application of the product. *Isaacson, supra* at 450. In addition, the method of warning and application was completely in the government's hands. *Id.* Finally, the government had full knowledge of the dioxin "problem" inherent in the production of Agent Orange. *Id.* These factors demonstrated the control with which the government operated and, thus, warranted a different holding than *Ryan*. *Id.*

14. The present case is substantially similar to *Isaacson*. In constructing its marine steam turbines for the Navy, GE acted under the direction of a federal officer. *See* Affidavit of David Hobson attached hereto as Exhibit D. GE manufactured and designed the marine steam turbines at issue according to precise, detailed specifications promulgated by Navy Sea Systems Command. *Id.* at ¶ 6. Additionally, an Inspector of Naval Machinery, who had offices on the premises of GE's

plants, personally oversaw the manufacturing process and enforced compliance with the Navy design specifications. *Id.* at ¶¶ 7-19. Further, the turbines were subject to various tests and trials supervised by the Navy before they were approved for use on military vessels. *Id.* at ¶¶ 20-21. Moreover, the Navy, as one of the world's leaders in industrial hygiene state-of-the-art at the time, would have possessed information superior to its equipment suppliers such as GE. In sum, virtually no aspect of the design and manufacture of the marine steam turbines at issue escaped the close control of the Navy and its officers.

15. This analysis also applies to "failure to warn" cases where "there is evidence that the government was involved in the decision to give, or not to give, a warning." *Kerstetter v. Pacific Scientific Co.,* 210 F.3d 431, 438 (5th Cir.) *cert. denied* 531 U.S. 919 (2000). The Court of Appeals for the Fifth Circuit has made it clear that the government contractor defense is available in "failure to warn" claims where the evidence shows that the lack of a warning reflects governmental direction or control rather than the unfettered discretion of the product's manufacturer, and applies wherever: 1) the government approved or authorized the warnings which the plaintiff contends were inadequate or incomplete; 2) the warnings provided by the manufacturer conformed to the warnings as approved or authorized by the government; and 3) the manufacturer warned the government as to any product hazards known by the manufacturer but unknown by the government. *Kerstetter,* 210 F.3d at 438.

16. As stressed in *Kerstetter*, "[t]he government need not prepare the specifications to be considered to have approved them." *Id.* at 435. The only material issue is whether the manufacturer's designs and specifications were subjected to "substantial review" rather than a mere "rubber stamp" approval. *Id.* While this determination is necessarily fact specific, "substantial review" has plainly been shown upon evidence of a "'continuous back and forth' between the contractor and the

government." *Id.* In this regard, "[t]he specifications need not address the specific defect alleged; the government need only evaluate the design feature in question." *Id.* Once again, applying these general principles to "failure to warn" claims, the fact that governmental specifications or regulations did not specifically preclude the exact warning desired by the plaintiff does not take a "failure to warn" claim outside the scope of the government contractor defense so long as the government was involved generally as to the issue of product warnings (or specifically approved the warnings provided by the contractor) and was generally aware of the hazard in question. *Id.* at 438. Stated another way, "[i]nadequacy [of a warning] is not an issue when it is the government's warning in the first place." *Id.* at 438.

17. The present case is also substantially similar to *Kerstetter, supra*. As explained by David Hobson for GE:

> [T]he Navy exercised intense direction and control over all written documentation and any safety or caution information that the navy, in its sole discretion, directed be provided with these [GE] turbines.
>
> The U.S. Navy had precise specifications, practices and procedures that governed the content of any communication affixed to machinery supplied by GE to the Navy. GE would not have been permitted, under the specifications, associated regulations and procedures, and especially under the actual practice as it evolved in the field, to affix any type of warning or caution statement to a piece of equipment intended for installation onto a naval vessel, beyond those required by the Navy.
>
> [T]he U.S. Navy had precise specifications, practices and procedures as to the nature of written materials to be delivered with its naval turbines, such as engineering drawings, test reports, and other technical data that could be used as needed by shipboard engineering officers during the life of the equipment. Some of the material was typically compiled into a volume that was generically called a "technical manual." The Navy required that every piece of equipment be supplied with a defined number of copies of one or more technical manuals. Navy personnel participated intimately in the preparation of this kind of information and exercised specific direction and control over its contents. These manuals included safety information related to the operation of naval turbines only to the extent directed by the Navy.

> [T]he Navy, not GE, determined the nature of warnings communicated to naval personnel in relation to shipboard equipment and materials.

See Additional Affidavit of David Hobson attached hereto as Exhibit E at ¶¶ 2-6.

18. Similarly, as explained by J. Thomas Schroppe for Foster Wheeler:

> The Navy exercised intense direction and control over all written documentation to be delivered with its naval boilers...The Navy required that every piece of equipment be supplied with a defined number of copies of one or more technical manuals. Navy personnel participated intimately in the preparation of this kind of information and exercised specific direction and control over its contents. These manuals included safety information related to the operation of naval boilers only to the extent directed by the Navy.
>
> Furthermore, the Navy had precise specifications, practices and procedures that governed the content of any communication affixed to machinery supplied by Foster Wheeler to the Navy. Foster Wheeler would not be permitted, under the specifications, associated regulations and procedures, and especially under actual practice as it evolved in the field, to affix any type of warning or caution statement to a piece of equipment intended for installation onto a Navy vessel, beyond those required by the Navy.

See Affidavit of J. Thomas Schroppe attached hereto as Exhibit F at ¶¶ 21 and 22.

19. Thus, the presence or absence of warnings regarding defendants' equipment was strictly controlled by the Navy - and a clear basis for removal exists under § 1442(a)(1).

20. In further support of the removal, GE provides the Affidavit of Admiral Ben J. Lehman, U.S. Navy, Ret. See Affidavit of Admiral Lehman attached hereto as Exhibit G. Admiral Lehman joined the Navy in 1942 and worked as Ship Superintendent and Planning Officer at the Brooklyn Navy Yard between 1942 and 1944, as Ship Superintendent at the San Francisco Naval Shipyard from 1950 to 1952, and as Planning Officer at the Assistant Industrial Manager Office in San Francisco from 1952 to 1054. Id. at ¶ 1. He also worked as an engineer at GE between 1946 and 1948. Id. During his tenure in the Navy and as Ship Superintendent, Admiral Lehman was personally involved with the supervision and oversight of ship alterations and equipment over hauls

at the Brooklyn Navy Yard. *Id.* at ¶ 3. Admiral Lehman states in his Affidavit the Navy controlled every aspect of the design and manufacture of equipment intended for installation on Navy vessels and that the Navy could not, and did not, permit its contractors to implement changes from military specifications. *Id.* at ¶¶ 2 and 3. He further states that in the 1940s and afterward, the Navy had complete control over every aspect of each piece of equipment including instructions, warnings, drawings, nameplates, texts of instruction manuals and "every other document relating to the construction, maintenance and operation" of equipment of its vessels. *Id.* at ¶ 4.

21. Moreover, in further support of the removal, Foster Wheeler provides an additional Affidavit of Admiral Lehman. *See* Additional Affidavit of Admiral Lehman attached hereto as Exhibit H. Admiral Lehman states:

> The U.S. Navy would not have allowed its equipment suppliers, such as Foster Wheeler, to affix any warning related to any asbestos hazards on their equipment. This would have included boilers. Further, the U.S. Navy would not have allowed Foster Wheeler to place any warnings related to asbestos hazards in any written material provided by Foster Wheeler to the U.S. Navy or to a U.S. Navy contractor in accordance with its contracts, including its technical and operations manuals. To do so would have interfered with the U.S. Navy's mission and control of its ships and personnel.

*Id.* at ¶ 14.

22. These facts have been held sufficient to support removal in a similar case. *See Nesbiet v. General Electric Company, et al.*, 04 CV 9321 (S.D.N.Y March 28, 2005) attached hereto as Exhibit I. In fact, in another recent case removed for the same reasons, the Court, in denying plaintiffs' Motion to Remand, noted that "[p]laintiffs concede the obvious—the federal officer removal statute, which has been applied to government contractors, permits a federal contractor defendant to remove a case in which no federal claim is asserted, as long as the defendant intends to assert a defense dependent on federal law (i.e., federal officer immunity, based on the following of

government specifications in the manufacture of the asbestos-containing product)." *See Frawley v. General Electric Company, et al.*, 06 CV 15395 (S.D.N.Y. March 1, 2007) at page 3 attached hereto as Exhibit J. Clearly, defendants' Affidavits support federal removal jurisdiction under 28 U.S.C. § 1442(a)(1) and the federal nexus to defendants' actions has been established.

23.   A properly removed case cannot be remanded for discretionary or policy reasons such as allegedly related state court cases or a contention that judicial economy compels remand. 28 U.S.C. § 1447(c); *Thermitron Products, Inc. v. Hermansdorfer*, 423 U.S. 336 (1976). The federal officer removal statute is not narrow or limited, and it should not be frustrated by a narrow or grudging interpretation of § 1442(a)(1). *Willingham v. Morgan*, 395 U.S. 402, 405 (1960).

24.   Defendants are not required to notify and obtain the consent of any other defendant in this action in order to remove plaintiff's action as a whole under § 1442(a)(1). *See Torres v. CBS News*, 854 F.Supp. 245 (S.D.N.Y. 1994)

25.   As required by 28 U.S.C. § 1446(b) and the local rules of this Court, true and correct copies of the process and pleadings served upon defendants are being filed with this Notice of Removal. Please note, however, that no Orders have been entered to date.

## Conclusion

26.   Removal of this action is proper under 28 U.S.C. § 1442, because it is a civil action brought in a state court, and the federal district courts have original jurisdiction over the subject matter under 28 U.S.C. § 1442(a)(1) because defendants were acting under an officer or agency of the United States.

THEREFORE, General Electric Company and Foster Wheeler, L.L.C. pursuant to these statutes and in conformance with the requirements set forth in 28 U.S.C. § 1446, remove this action for trial from the Supreme Court of the State of New York, County of New York, on this 25th day of July, 2007.

> Respectfully submitted,
> **Sedgwick, Detert, Moran & Arnold LLP**
> Three Gateway Center, 12th Floor
> Newark, New Jersey 07102
> (973) 242-0002
>
> By: _____
> Michael A. Tanenbaum
>
> **ATTORNEYS FOR DEFENDANTS:**
> **GENERAL ELECTRIC COMPANY**
> **FOSTER WHEELER, L.L.C.**

**cc: Via Hand Delivery**

Michael Roberts, Esq.
WEITZ & LUXENBERG
180 Maiden Lane
New York, New York 10038-4925
(212) 558-5500
ATTORNEYS FOR PLAINTIFFS

All Known Defense Counsel (via regular mail)